IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SPENCER ALLAN PROCTOR,         )
                               )
              Plaintiff,       )
                               )
     v.                        )     14CV238
                               )
J.C. HUGGINS, et al.,          )
                               )
              Defendants.      )
                               )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss (Doc. #17) by Defendants Trask, Shamberger, Wilkes, Moore, Work, Jones, Reynolds, Shaw, Cook, and Campbell (collectively "Defendants").[1] Plaintiff Spencer Allan Proctor did not respond to Defendants' motion. For the reasons stated below, Defendants' motion is granted.

Mr. Proctor initially filed suit against Defendants on October 20, 2011 (1:11CV878). On January 31, 2013, that suit was dismissed without prejudice to his filing a new complaint on the proper § 1983 forms and correcting noted defects. (Doc. #5, 1:11CV878.) On March 19, 2014, Mr. Proctor filed the instant action, alleging that Defendants' conduct during Mr.

---

[1] Summonses were also issued for Defendants Huggins, Little, Parrish, and Poole, but were returned unexecuted. (Doc. #11.)

Proctor's incarceration at Morrison Correctional Institution violated his rights. (Doc. #2.) Defendants have moved to dismiss.

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. at 1965); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). However, when a complaint states facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1966).

2

A pro se complaint "is to be liberally construed and . . ., however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations omitted). Nevertheless, the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (2008). When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in his favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014).

I.

A.

A central focus of the Complaint are allegations, albeit at times inconsistent, involving a warrant and a detainer in York County, South Carolina. (See Compl. ¶¶ 5-11, 13, 15, 17, 23-24, 31-34.) Allegedly, on January 18, 2011, while Mr. Proctor was in the custody of the North Carolina Department of Corrections, a search in AOC and NCIC revealed a "Governor Warrant." (Id. ¶¶ 1, 23; see also ¶ 17 (noting that Defendant Trask stated that, on January 18, 2011, OPUS reflected pending charges

3

against Mr. Proctor in South Carolina).) On January 25, 2011, Mr. Proctor was transferred to Morrison Correctional Institution (id. ¶ 3), where he claims "[a]ll relevant acts of violations took place." After his transfer, on February 10, 2011, Defendant Wilkes allegedly told Mr. Proctor there were outstanding warrants for him in York County, South Carolina. (Id. ¶ 5.) Despite Mr. Proctor's protestations otherwise, Defendant Wilkes allegedly contacted York County Sheriff's Office and initiated a detainer. (Id. ¶¶ 7, 9, 23.[2])

Mr. Proctor alleges that, according to Defendant Shamberger, as of March 2, 2011, there was an active detainer on file. (Id. ¶ 17.[3]) Allegedly, Michael Tart of the Office of Combined Records told Mr. Proctor that a detainer was placed on him on March 16, 2011 (id. ¶ 24), the same day Defendant Wilkes received IAD Form 1[4] for Mr. Proctor to sign, which he refused to do (id. ¶¶ 10, 11).

---

[2] The alleged dates on which Defendant Wilkes initiated the detainer are inconsistent. Defendant Wilkes is alleged to have contacted York County Sheriff's Office to initiate the detainer on February 10, 2011 (Compl. ¶ 23) and on March 10, 2011 (id. ¶ 9).
[3] Mr. Proctor also alleges that Defendant Wilkes told him that there was a South Carolina detainer as of February 13, 2011. (Id. ¶ 7.)
[4] According to the North Carolina Department of Public Safety, an out-of-state detainer causes a Form 1 to be sent to the inmate and the facility informing them of the detainer. N.C. Dep't of Pub. Safety, Prisons, Policy and Procedure, Outstanding Charges/Detainers at 5, https://www.ncdps.gov/div/Prisons/G_0100_10_20_14.pdf. The Form 1

4

However, on April 28, 2011, Mr. Proctor allegedly received confirmation from York County Clerk of Court that no warrants were being served on him. (Id. ¶ 13.) Likewise, on June 21, 2011, allegedly the South Carolina Circuit Court of the 16th Judicial Circuit Chief Administrative Judge replied to an inquiry from Mr. Proctor that there was no matter in York County to which he was a party. (Id. ¶ 31.) The next day, Mr. Proctor purportedly received a reply from the South Carolina Extradition Coordinator of the Office of the Governor stating that the detainer and extradition request were withdrawn on October 20, 2010 and a notification from Combined Records in Raleigh, North Carolina addressed to the York County Sheriff's Office confirming the withdrawal of the detainer. (Id. ¶¶ 32, 34.)

B.

"The Interstate Agreement on Detainers Act (IAD) is a compact among 48 states [including North Carolina and South Carolina], the District of Columbia, and the Federal Government. It enables a participating State to gain custody of a prisoner incarcerated in another jurisdiction, in order to try him on criminal charges." Reed v. Farley, 512 U.S. 339, 341, 114 S. Ct. 2291 (1994); see N.C. Gen. Stat. §§ 15A-761-767 (2015); S.C. Code Ann.

---

consists of the Notice of Indictment, Information on Complaint, and Right to Request Disposition. Id.

5

§§ 17-11-10-80 (2015). A violation of the IAD "may be remedied under section 1983." Bush v. Muncy, 659 F.2d 402, 406 (4th Cir. 1981) (citing Maine v. Thiboutot, 448 U.S. 1, 100 S. Ct. 2502 (1980) & Cuyler v. Adams, 449 U.S. 433, 101 S. Ct. 703 (1981)).

However, Mr. Proctor has not alleged a violation of the IAD. For example, he has not alleged a violation of a speedy trial on the South Carolina charges (see, e.g., Art. III, IV of the IAD), but, in fact, alleges that Defendant Wilkes acquired IAD Form 1 and insisted that Mr. Proctor complete it. Further, Mr. Proctor alleges any South Carolina detainer that may have been filed against him was withdrawn before he was even in the custody of the Morrison Correction Institution. He does not allege that he was wrongfully transferred to South Carolina, or to any other institution, as a result of the detainer (see, e.g., id.).[5] Nor has he alleged any other injury possibly related to the detainer.

Because Mr. Proctor has failed to allege facts that even liberally construed and accepted as true state a claim for relief with respect to the

---

[5] Mr. Proctor does allege that he was transferred on June 10, 2011 to Lanesboro Correctional Institution and was "in segregation" there. (Id. ¶ 34.) Lanesboro Correctional Institution is a "high security prison facility" in Polkton, North Carolina. N.C. Dep't of Pub. Safety, https://www.ncdps.gov/index2.cfm?a=000003,002240,002242,002293. There is no indication that he was transferred there as a result of the alleged York County, South Carolina detainer.

6

alleged South Carolina warrant and detainer that is plausible on its face, this claim will be dismissed.

II.

A.

Next, it appears from the Complaint that Mr. Proctor seeks redress for the outcome of two disciplinary proceedings: (1) for allegedly having another inmate's mail among Mr. Proctor's property and (2) for escape. (Compl. ¶¶ 20-21 [sic].[6]) Mr. Proctor alleges he was given notice of the disciplinary process and that evidence, including witness statements, was presented of which he was made aware. (Id. ¶¶ 21, 22, 21 [sic], 22 [sic].[7]) Mr. Proctor was convicted of the charges. (Id. ¶¶ 21, 22.)

He also alleges that on May 17, 2011, he was "placed in hand cuffs and [esc]orted to Administrative lockup (The Hole)" and that on June 1, 2011, he was "denied freedom and remained in segregation by the Unit Classification board." (Id. ¶¶ 20, 30.) Between May 17 and June 1, Mr. Proctor had been given notice of the disciplinary process mentioned above

---

[6] After paragraph 22, the Complaint numbers the subsequent paragraphs 21, 22, 23, and so on. The paragraphs cited in support of Mr. Proctor's disciplinary proceeding allegations are 20, 21, 22, and 21 [sic].
[7] Id.

7

and had received one write-up associated with the charged conduct, which included escape; however, he had yet to be convicted. (Id. ¶¶ 21, 22.)

He also alleges filing grievances and a letter of complaint, some of which appear to be in response to his disciplinary convictions, although it is difficult to discern the focus of each. (Id. ¶¶ 22 [sic], 23, 26, 27, 35-37.[8])

B.

Although "prisoners do not shed all constitutional rights at the prison gate, . . . '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Sandin v. Conner, 515 U.S. 472, 485, 115 S. Ct. 2293, 2301 (1995) (alteration in Sandin) (citing Wolff v. McDonnell, 418 U.S. 539, 555, 94 S. Ct. 2963, 2974 (1974) and quoting Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 125, 97 S. Ct. 2532, 2537 (1977)). Nevertheless, "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause." Id., 515 U.S. at 483-84, 115 S. Ct. at 2300 (citing Wolff, 418 U.S. 539, 94 S. Ct. 2963). Such liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant

---

[8] At least one allegation of a filed grievance, though, appears to relate to the alleged York County, South Carolina detainer. (Id. ¶ 12.)

8

hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484, 115 S. Ct. at 2300 (internal citations omitted).

In Berati v. Smith, 120 F.3d 500, 502 (1997), inmates argued, among other things, that their confinement in administrative segregation deprived them of a liberty interest in remaining in the general prison population and the process that was due was inadequate. The initial question before the court was whether the inmates' "confinement in administrative segregation imposed such an atypical hardship on them vis a vis ordinary prison life that they possessed a liberty interest in avoiding it." Id. The answer requires a fact-specific analysis of the conditions to which the inmates were exposed in administrative segregation and those they could expect to experience "as an ordinary incident of prison life." Id.

If an inmate's liberty interest is implicated, he must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff, 418 U.S. at 563-67, 94 S. Ct. at 2978-80). Further, the minimum requirements of procedural due process require

9

that at least some evidence in the record support the findings of the prison disciplinary board "from which the conclusion of the administrative tribunal could be deduced . . . ." Id. at 455 (quoting United States ex rel. Vajtauer v. Comm'r of Immigr., 273 U.S. 103, 106, 47 S. Ct. 302, 304 (1927)).

Here, Mr. Proctor has not alleged sufficient facts to maintain a Due Process violation with respect to his disciplinary proceedings or segregation. There are no allegations of prison conditions as part of ordinary prison life or as part of segregation to support a liberty interest. Even assuming there were sufficient factual allegations to support a liberty interest in avoiding segregation, the alleged facts indicate that Mr. Proctor was afforded due process. He actually alleges that he was given notice of the disciplinary process resulting from his allegedly possessing another inmates' mail among his property and escape; witnesses provided statements, some of which tended to exculpate Mr. Proctor; he was made aware of the evidence against him; he participated in the grievance process before and after his conviction for these disciplinary charges; and he received responses, although not always to his liking, to his inquiries and requests for information. (Id. ¶¶ 12, 21-23,[9] 26-27, 29, 35-37.) The evidence against Mr. Proctor, even as he presents it, is sufficient to meet the required

---

[9] This includes paragraphs 21 [sic] and 22 [sic].

modicum of evidence to deduce the administrator's conclusion of guilt. (Id. ¶ 21 [sic].) Therefore, this claim is dismissed.

### III.

#### A.

Mr. Proctor also alleges that Defendant Moore denied him access to the courts on June 1, 2011 (id. ¶ 28), but there is no other allegation in support of this conclusion. Perhaps related is the allegation that Assistant Superintendent Poole[10] told Mr. Proctor on June 30, 2011 that there was "no further action warranted" for the alleged denial of notary service, denial of access to his account because his card was turned off, denial of replacement of property that Defendant Shaw and Officer Quick confiscated, "reprisal by staff members for standing up for [his] rights, and numerous other allegations." (Id. ¶ 35.)

#### B.

"[P]risoners have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821, 97 S. Ct. 1491, 1494 (1977). "A prisoner must identify an actual injury resulting from official conduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). Conclusory allegations are insufficient. Id.

---

[10] See supra n. 1.

Mr. Proctor includes no factual allegation that his efforts to pursue a legal claim were hindered as a result of being denied notarial service, access to his account, or the replacement of his property. There is no indication of any legal process in which Mr. Proctor wanted to participate or communication with a court that Mr. Proctor wanted to initiate but was hindered from accomplishing as a result of Defendants' actions. In fact, he alleges that he "filed legal document with the S.C. Clerk of Court" and that he communicated with and received a reply from the South Carolina Circuit Court of the 16th Judicial Circuit, Chief Administrative Judge concerning Mr. Proctor's inquiry as to any pending cases against him in York County. (Compl. ¶¶ 31, 33.) Mr. Proctor has simply not alleged any facts to support his conclusory allegation that he was denied access to the courts. Therefore, this claim, too, is dismissed.

IV.

For the reasons stated above, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Doc. #17) is GRANTED.

This the 10th day of September, 2015.

<u>/s/ N. Carlton Tilley, Jr</u>.
Senior United States District Judge